**Luis RUSPI**

**v.**

**Werner GLATZ, Richard Clerkin, PPL Corporation, PPL Energy Supply, LLC, PPL Holtwood, LLC and PPL Generation, LLC.**

**Raymond Pawelski and Chester Pawelski**

**v.**

**Werner Glatz, Richard Clerkin, PPL Corporation, PPL Energy Supply, LLC, PPL Holtwood, LLC.**

**Appeal of Luis Ruspi, Raymond Pawelski and Chester Pawelski.**

Superior Court of Pennsylvania.

Argued Feb. 27, 2013.

Filed May 24, 2013.

Michael Gallacher, Clarks Green, for appellants.

C. Edward S. Mitchell, Williamsport, for PPL Entities, appellee.

BEFORE: PANELLA, J., ALLEN, J., and PLATT, J.*

OPINION BY PLATT, J.

Appellants, Luis Ruspi, Raymond Pawelski, and Chester Pawelski, appeal in these consolidated cases from the order of June 11, 2012 entering final judgment, after denial of a motion for post-trial relief, against defendants Werner Glatz and Richard Clerkin, jointly and severally. The entry of final judgment rendered final and appealable the order of August 10, 2010, granting summary judgment in favor of codefendants PPL Corporation, PPL Energy Supply, LLC, PPL Holtwood, LLC and PPL Generation, LLC (collectively, PPL, or Appellees).[1] Appellants challenge the grant of summary judgment as improper, arguing *inter alia* that federal law and regulation of hydroelectric plants preempt state law on tort liability and statutory immunity. We affirm.

This matter arises out of a boating collision that occurred on Lake Wallenpaupack.[2] Appellee PPL Holtwood, LLC owns and operates Lake Wallenpaupack for the generation of hydroelectric power, under a license issued by the Federal Energy Regulatory Commission (FERC) pur-

---

* Retired Senior Judge assigned to the Superior Court.

1. Appellants do not challenge the trial court's determinations with respect to Glatz or Clerkin, who are not parties to this appeal. Appellants purport to appeal directly from the order granting summary judgment. We note that an appeal may be taken only from a final order, that is, an order that disposes of all claims and all parties. *See* Pa.R.A.P. 341(a). Appellees assert that Appellants' notice of appeal is untimely because the final order in this case is the November 8, 2011 order denying Richard Clerkin's motion for post-trial relief. (*See* Appellees' Motion to Quash Appeal, at ¶¶ 17, 28). However, this Court has explained that "[a]ppeals to this Court are usually permitted only after entry of a final judgment.... An appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of post-verdict motions, not from the order denying post-trial motions." *Raheem v. Univ. of the Arts*, 872 A.2d 1232, 1234 n. 2 (Pa.Super.2005) (citation omitted). Here, the trial court's final judgment entered on June 11, 2012, disposed of all claims and all parties, and rendered its prior grant of summary judgment in favor of Appellees final for appeal purposes. *See Wright v. Allied Signal, Inc.*, 963 A.2d 511, 513 (Pa.Super.2008), *appeal denied*, 603 Pa. 696, 983 A.2d 730 (2009) ("A trial court order declaring a case settled as to all remaining parties renders prior grants of summary judgment final for Rule 341 purposes [.]") (citations omitted). We have amended the caption accordingly.

2. Lake Wallenpaupack was created in 1927 when a predecessor of PPL, the Pennsylvania Power and Light Company, dammed the Wallenpaupack Creek to generate hydroelectric power. *See Pennsylvania Power & Light Co. v. Maritime Mgmt., Inc.*, 693 A.2d 592, 593 (Pa.Super.1997), *appeal denied*, 550 Pa. 708, 705 A.2d 1310 (1997). "Lake Wallenpaupack is thirteen miles long, approximately one mile wide, and up to sixty feet deep." *Id.* For a spirited discussion of the legal impact of navigability on ownership of the lake, not disputed here, *see id.* at 593–96, 597–606 (Kelly, J., dissenting), 606–07 (Olszewski, J., concurring).

suant to the Federal Power Act, 16 U.S.C. §§ 791a–828c.[3]  (*See* Appellees' Brief, at 4; Trial Court Opinion, 8/10/10, at 7).  The license, in pertinent part, requires PPL to hold the lake open to "substantial public use," free of charge, "by providing public access to the lake at boat launches, campgrounds and public beaches for recreational purposes."  (Trial Court Opinion, 8/10/10, at 6).

On June 6, 2008, at approximately 11:00 p.m., Appellants were night fishing on the lake in a boat owned by Appellant Chester Pawelski when a boat owned by Richard Clerkin and operated by Werner Glatz broadsided Chester's boat.  Appellants Luis Ruspi and Raymond Pawelski were severely injured in the collision and Appellant Chester Pawelski's boat sustained damage.[4]

On May 14, 2009, Appellants Raymond and Chester Pawelski filed a complaint in the Wayne County Court of Common Pleas alleging negligence and gross negligence against Werner Glatz, Richard Clerkin, and Appellees.  Luis Ruspi filed a similar complaint on May 27, 2009.  The trial court consolidated the actions on October 15, 2009.[5]

On May 12, 2010, Appellees filed a motion for summary judgment, claiming that they are immune from tort liability under the Recreational Use of Land and Water Act (RULWA), 68 P.S. §§ 477–1–477–8.  ( [PPL] Motion for Summary Judgment, ¶ 23).  Appellants filed separate answers, both arguing that federal law preempted state law immunity from tort liability. (*See* Plaintiffs' Answers to PPL Defendants' Motion for Summary Judgment, at ¶ 23).  Alternatively, they asserted that PPL knew boaters congregated at a location called Party Cove and consumed alcoholic beverages, but failed to warn or to take precautionary measures, precluding RULWA immunity.  (*See id.* at ¶ 13).

The trial court granted Appellees' motion on August 10, 2010, following a hearing, ruling that PPL was immune from liability under RULWA.[6]  On August 19, 2011, after a bench trial, the court entered a verdict in favor of Appellants, finding Richard Clerkin and Werner Glatz jointly

---

3.  Our sister Commonwealth Court has succinctly explained the pertinent regulatory history, as follows:

> The Federal Power Act gave the Federal Power Commission jurisdiction over the transmission of electric energy in interstate commerce and the sale of such energy at wholesale in interstate commerce.  16 U.S.C. § 824(a).  Such federal regulation, however, only extends to those matters which are not subject to regulation by the states.  *Id.* In 1977, Congress transferred the responsibilities of the Federal Power Commission to the Federal Energy Regulatory Commission (FERC).  As a major electric utility, PP & L is subject to the Federal Power Act and submits detailed annual reports to the FERC. 16 U.S.C. § 825c. [] *Pennsylvania Power & Light Co. v. Commonwealth*, 668 A.2d 620, 621 n. 1 (Pa.Cmwlth. 1995), affirmed, 553 Pa. 1, 717 A.2d 504 (1998).

4.  Werner Glatz subsequently pleaded guilty to two counts of recklessly endangering another person, 18 Pa.C.S.A. § 2705, and one count of operating watercraft under influence of alcohol, 30 Pa.C.S.A. § 5502(a)(1), for his involvement in the collision.  He was sentenced to a term of no less than thirteen nor more than fifty-four months' imprisonment.

5.  On January 22, 2010, the trial court entered a default judgment against Werner Glatz.

6..  On September 9, 2010, Appellants filed a motion to amend the order granting summary judgment, requesting that the court include the certification necessary for a permissive appeal from an interlocutory order, so they could petition for permission to appeal. The trial court denied the motion on October 7, 2010, and the case proceeded to a bench trial against the remaining defendant, Richard Clerkin.  *See* 42 Pa.C.S.A. § 702(b); *see also* Pa.R.A.P. 1311(b).

and severally liable for Appellants' personal injuries and property damage. On August 29, 2011, Richard Clerkin filed a motion for post-trial relief, which the trial court denied on November 8, 2011. On June 11, 2012, Appellants filed a praecipe for entry of a final judgment and, on that same date, the trial court entered final judgment in favor of Appellants and against Defendants Clerkin and Glatz. Appellants filed a timely notice of appeal on July 3, 2012.[7] On August 6, 2012, Appellants filed a timely Rule 1925(b) statement of errors.[8]

Appellants raise three issues for our review, all of which, in effect, challenge the trial court's order granting Appellees' motion for summary judgment.

    1. Is the RULWA preempted by the Federal Power Act and its comprehensive regulations?

    2. Does Lake Wallenpaupack qualify as "land" under the RULWA?

    3. Does PPL's failure to guard or warn boaters regarding the dangerous conditions created by Party Cove preclude it from availing itself of immunity under the RULWA?

(Appellants' Brief, at 4).[9]

Our standard of review on an appeal from the grant of a motion for summary judgment is well-settled:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

    In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Murphy v. Duquesne Univ. of the Holy Ghost,* 565 Pa. 571, 777 A.2d 418, 429 (2001) (case citations and quotation marks omitted).

█ In their first issue, Appellants claim that the Federal Power Act preempts Pennsylvania's RULWA. (*See* Appellants' Brief, at 13–19). We disagree.

Issues of preemption comprise pure questions of law, of which the standard of review is *de novo* and the scope of review plenary. *Dooner v. DiDonato,* 601 Pa. 209, 971 A.2d 1187, 1193 (2009).

       \*      \*      \*

█ Federal preemption has its origin in the Supremacy Clause of Article VI of the United States Constitution:

---

7. *See* note 1, *supra* at 2.

8. The trial court did not file a Rule 1925(a) opinion. *See* Pa.R.A.P. 1925. However, the court addressed the issues of immunity and preemption in its opinion and order granting Appellees' motion for summary judgment. (*See* Trial Ct. Op., 8/10/10, at 1–8).

9. Appellants filed a joint brief. Appellees did as well.

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const., Art. VI, cl. 2. Under the Supremacy Clause, state laws in conflict with acts of Congress are "without effect." *Altria Group, Inc. v. Good,* 555 U.S. 70, 129 S.Ct. 538, 543, 172 L.Ed.2d 398 (2008). In determining whether a federal statute preempts a state law, "the purpose of Congress is the ultimate touchstone in every preemption case." *Id.* (internal citations and quotations omitted). There exists, however, a general presumption against federal preemption, such that "the historic police powers of the state are not to be superseded by federal law unless that is the clear and manifest purpose of Congress." *In re Novosielski,* 605 Pa. 508, 992 A.2d 89, 99 (2010).

That clear and manifest purpose can be found in three forms. First, "Congress may indicate preemptive intent through a statute's express language or through its structure and purpose." *Altria,* 129 S.Ct. at 543. The existence of an express preemption clause does not end the analysis however, "because the question of substance and scope of Congress' displacement of state law still remains." *Id.* Second, preemption may be inferred from a federal statute, "if the scope of the statute indicates that Congress intended federal law to occupy the legislative field...." *Id.* Finally, "even where Congress has not completely displaced state regulation in a specific area, state law is nullified if there is a conflict between state and federal law."

*Dooner,* 971 A.2d at 1194 (citing *Freightliner Corp. v. Myrick,* 514 U.S. 280, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995)).

*In re Estate of Sauers,* 613 Pa. 186, 32 A.3d 1241, 1248, 1249–50 (2011) (quotation marks in original).

Instantly, Appellants concede that pursuant to 16 U.S.C. § 821, the Federal Power Act reserves to the states power to regulate the matters there enumerated. (*See* Appellants' Brief, at 15). Section 821, State Laws and Water Rights Unaffected, provides as follows:

Nothing contained in this chapter shall be construed as affecting or intending to affect or in any way to interfere with the laws of the respective States relating to the control, appropriation, use, or distribution of water used in irrigation or for municipal or other uses, or any vested right acquired therein.

16 U.S.C. § 821.

Nevertheless, Appellants argue that "[a]ll other aspects of a hydroelectric project, **including recreational aspects,** are controlled exclusively by the federal government." (Appellants' Brief, at 15) (emphases added). In support of this hypothesis, Appellants cite *First Iowa Hydro-Elec. Coop. v. Fed. Power Comm'n,* 328 U.S. 152, 66 S.Ct. 906, 90 L.Ed. 1143 (1946). Appellants' reliance is misplaced.

*First Iowa* addressed whether an applicant was required to secure an Iowa state permit before securing a federal license to generate hydroelectric power. *See id.* at 166–67, 66 S.Ct. 906. Contrary to Appellants' implication, the decision does not directly address the regulation of recreational aspects of a hydroelectric project. Rather, the Court decided that:

In the Federal Power Act there is a separation of those subjects which remain under the jurisdiction of the states from those subjects which the Constitu-

tion delegates to the United States and over which Congress vests the Federal Power Commission with authority to act. **To the extent of this separation, the Act establishes a dual system of control.** The duality of control consists merely of the division of the common enterprise between two cooperating agencies of Government, each with final authority in its own jurisdiction.

*Id.* at 167, 66 S.Ct. 906 (emphasis added).

Appellants' preemption argument is unsupported by the principal case cited. Otherwise, Appellants fail to demonstrate Congressional preemptive intent, fail to show Congress' displacement of state law, and fail to prove that Congress intended federal law to occupy the legislative field. To the contrary, the statute and subsequent caselaw confirm that Congress intended a dual system of controls to be in effect, reserving to the various states the traditional role of deciding tort liability. Appellants fail to overcome the general presumption against federal preemption. *See In re Estate of Sauers, supra.*

Furthermore, the logic of Appellants' argument is contradicted by other federal caselaw.[10] *See South Carolina Pub. Serv. Auth. v. FERC,* 850 F.2d 788 (D.C.Cir. 1988) (concluding that FERC licensing authority under Federal Power Act did not include power to displace existing state tort law with its own rules of liability for damages caused by licensees):

> The [FERC]'s interpretation seems even less tenable when one considers that its unique brand of "protection" would oust the states of their traditional

authority to determine the rules of liability in tort. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). As the Supreme Court noted in *FTC v. Bunte Bros., Inc.,* 312 U.S. 349, 351, 61 S.Ct. 580, 582, 85 L.Ed. 881 (1941), "in ascertaining the scope of congressional legislation a due regard for a proper adjustment of the local and national interests in our federal scheme must always be in the background." Deference to these local interests requires that we decline to find in the Act "radiations beyond the obvious meaning or language unless otherwise the purpose of the Act would be defeated." *Id.*

*Id.* at 792 (footnote omitted); *see also Hahn v. United States,* 493 F.Supp. 57, 58–59 (M.D.Pa.1980), *affirmed,* 639 F.2d 773 (3rd Cir.Pa.1980) (granting summary judgment, on stipulated facts, in favor of United States as immune from suit under Federal Tort Claims Act pursuant to RULWA). Appellants' first claim does not merit relief.

■■ In their second question, Appellants posit that summary judgment was improper because Lake Wallenpaupack does not qualify as "land" under RULWA. (*See* Appellants' Brief, at 4). They maintain that the highly developed nature of the recreational and residential areas surrounding the lake disqualify the lake itself from the statutory immunity RULWA provides. (*See id.* at 19–25). Specifically, Appellants claim that Lake Wallenpaupack "does not constitute 'land' under the RULWA and protection cannot be extended" because "[t]he Lake is highly improved

---

10. This Court has explained:

[W]e observe that it is well-settled that this Court is not bound by the decisions of federal courts, other than the United States Supreme Court, or the decisions of other states' courts. We recognize that we are not bound by these cases; however, we may

use them for guidance to the degree we find them useful and not incompatible with Pennsylvania law.

*Eckman v. Erie Ins. Exch.,* 21 A.3d 1203, 1207 (Pa.Super.2011) (citation and internal quotation marks omitted).

and thickly developed." (*Id.* at 20–21). We disagree.

"[T]he RULWA was enacted to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." *Stanton v. Lackawanna Energy, Ltd.*, 584 Pa. 550, 886 A.2d 667, 675 (2005) (citations and internal quotation marks omitted). RULWA provides landowners with immunity from ordinary negligence liability in instances where the land or water area is provided to the public for recreational purposes free of charge. *See id.* Specifically, section 477–3 of RULWA, "Duty to keep premises safe; warning," provides in relevant part as follows:

> Except as specifically recognized or provided in section 6 of this act, an owner of land **owes no duty of care** to keep premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

68 P.S. § 477–3 (emphasis added) (footnote omitted).

RULWA defines "Land" as "land, roads, **water, watercourses,** private ways and buildings, structures and machinery or equipment when attached to the realty." 68 P.S. § 477–2 (emphasis added). Accordingly, Appellants' interpretation contradicts the plain meaning of the statute. This Court has explained that:

> [O]ur RULWA cases have turned on whether the tract of land **on which an accident occurred** was large and unimproved; our courts have held that RULWA immunity applies to open land that

remains in a mostly natural state[.] . . . [However, w]here land devoted to recreational purposes has been improved in such manner as to require regular maintenance in order for it to be used and enjoyed safely, the owner has a duty to maintain the improvements.

*Murtha v. Joyce,* 875 A.2d 1154, 1158 (Pa.Super.2005) (citations and quotation marks omitted) (emphasis added).

In *Stone v. York Haven Power Co.,* 561 Pa. 189, 749 A.2d 452, 455 (2000), our Supreme Court examined the applicability of RULWA's immunity provisions to Lake Frederick,[11] another man-made lake, and recognized a distinction between injuries arising from improvements on land, such as a dam, and injuries arising from unimproved or "raw" land. The *Stone* Court concluded:

> As to the lake, however, this Court agrees with Judge Olszewski's separate opinion below that this is **"exactly the type of area that the [RULWA] is intended to cover."** Lake Frederick is a large body of water used for outdoor water recreation by the public free of charge. While the body of water may be enhanced by the damming of the Susquehanna, it is not a highly developed recreational facility. But for the fact that Lake Frederick was created by the damming of the Susquehanna River, it is virtually indistinguishable from a natural lake used by the public for recreation.

> \*    \*    \*

> Lake Frederick is not like a basketball court or swimming pool, where we expect meticulous maintenance. Rather, it is a place people go to experience and **risk** the pleasures of the outdoors.

> \*    \*    \*

---

11. Lake Frederick was created by the damming of the Susquehanna River by power companies and is used by the public for recreational purposes free of charge. *See Stone, supra* at 454, 456.

**The burden of making a large body of water safe from inherent risks is too weighty to place on its owners.** It is not reasonable to expect such owners to undergo the risks of liability for injury to persons and property attendant upon the use of their land by strangers from whom the accommodating owner receives no compensation or other favor in return.

*Stone, supra* at 457 (citations omitted) (emphases added); *cf. Rivera v. Phila. Theological Seminary of St. Charles Borromeo, Inc.,* 510 Pa. 1, 507 A.2d 1, 9 (1986) (holding RULWA immunity from tort liability did not apply to drowning in indoor swimming pool).

Here, the boating collision in which Appellants sustained their injuries and damages occurred on the open waters of Lake Wallenpaupack, while Appellants were fishing in their boat at night. (*See* Trial Ct. Op., 8/10/10, at 3; Boat Accident Investigator's Report, 9/05/08, at unnumbered page 6). The accident did not take place on any improvement, like a dam, a swimming pool, or a basketball court constructed by Appellees, that required regular maintenance. Appellants' claim that the immunity provision is inapplicable because the **areas surrounding** Lake Wallenpaupack are highly developed is meritless and fails to recognize that this Court's focus must be on the specific land where the injury occurred, rather than on the property as a whole. *See Murtha, supra* at 1158. Appellants' second issue does not merit relief.

In their third question, Appellants claim that Appellees' failure to guard or warn boaters of a dangerous condition precluded immunity under RULWA. (*See* Appellants' Brief, at 4).

Specifically, Appellants argue "that PPL knew and [sic] had reason to know of the drinking activities of numerous boaters at Party Cove and should have realized that boaters would operate boats on the Lake while intoxicated during the evening hours." (Appellants' Brief, at 26; *see also id.* at 26–29). They maintain this knowledge and failure to warn or to adopt remedial measures "establish willful and malicious conduct by PPL such that the RULWA is inapplicable." (*Id.* at 29). We disagree.

Appellants argue, in effect, that Appellees forfeited the statutory immunity provided by RULWA at 68 P.S. § 477–3 by purported willful and malicious conduct under section 477–6. (*See id.* at 26–29).

■ The applicability of immunity is a question of law as to which our standard of review is *de novo* and our scope of review is plenary. *See Christy v. Cranberry Volunteer Ambulance Corps, Inc.,* 579 Pa. 404, 856 A.2d 43, 46 (2004); *Hoffa v. Bimes,* 954 A.2d 1241, 1244 (Pa.Super.2008), *appeal denied,* 600 Pa. 763, 967 A.2d 960 (2009).

Section 477–6 of RULWA, "Liability not limited," provides as follows:

Nothing in this act limits in any way any liability which otherwise exists:

(1) For wilful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.

(2) **For injury suffered in any case where the owner of land charges the person** or persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the State or a subdivision thereof, any consideration received by the owner for such lease shall not be deemed a charge within the meaning of this section.

68 P.S. § 477–6 (emphasis added).

Here, despite Appellants' many references to **other** charges at Lake Wallenpaupack, there is no dispute that **Appellants**

did not pay a fee to go boating on the lake. (*See* Appellants' Brief, at 11). Therefore, the only basis to assert waiver of immunity is subsection (1): "wilful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." 68 P.S. § 477–6(1).

■ However, in this appeal, except for the mere bald assertion and conclusion of malice, Appellants fail to allege, let alone prove, any act of malice, or to cite pertinent authority in support of the claim that the purported failure to warn constituted a malicious act. (*See* Appellants' Brief, at 26–29). Therefore, any claim of malice or malicious conduct is waived. *See* Pa.R.A.P. 2119(a), (b).

Consequently, Appellants' only remaining claim is the willful failure to warn. Appellants maintain that PPL should have warned them "that boaters were driving while intoxicated on the Lake." (Appellants' Brief, at 27). In this context, we observe that, pursuant to section 477–7, RULWA does **not** create an independent cause of action:

> Nothing in this act shall be construed to:
>
> (1) Create a duty of care or ground of liability for injury to persons or property.
>
> (2) Relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this act to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care.

68 P.S. § 477–7.

Accordingly, Appellants cannot invoke the failure-to-warn provision as a basis of relief. Rather, they are limited to the argument that the trial court improperly granted summary judgment because PPL's statutory immunity under RULWA did not extend to the alleged willful conduct. The question of immunity does not create a question of fact for a jury, as Appellants maintain. (*See* Appellants' Brief, at 29). The applicability of immunity is a question of law, not fact. *See Christy, supra; Hoffa, supra.*

Appellants' sole authority in support of their claim of willful misconduct is *Barr v. City & County of Philadelphia,* 653 A.2d 1374 (Pa.Cmwlth.1995).[12] (*See* Appellants' Brief, at 26–29). Curiously, Appellants do not cite any other authority as pertinent, even though they maintain that "Pennsylvania and Federal Courts have differed over whether a property owner must have actual knowledge of a dangerous condition before a failure to guard or warn can be considered 'willful and malicious' under § 477–6 of the RULWA." (*Id.* at 26). In any event, *Barr* is of limited usefulness as authority for this appeal, even beyond its subsequent reversal, because in *Barr* the apparently uncontradicted evidence admitted at trial showed that:

> [T]he City was fully aware that Devil's Pool was a popular, public swimming hole, that there had been previous drownings and swimming accidents in Devil's Pool, that both immediately prior to and at the time of decedent's death there were no warning signs posted at Devil's Pool relating the danger of swimming therein, that the water in Devil's Pool was not clear, thereby preventing one from seeing far below the surface,

---

12. For completeness and accuracy we note that *Barr* was *reversed on other grounds sub nom. Lory v. City of Philadelphia,* 544 Pa. 38, 674 A.2d 673 (1996), *cert. denied,* 519 U.S. 870, 117 S.Ct. 184, 136 L.Ed.2d 123 (1996)

(holding city immune from claims based on willful or malicious conduct under The Tort Claims Act; declaring that negligent acts do not include willful or malicious conduct).

that one could enter the water by climbing down rocks which projected outward beneath the water line, and that the City did not have any type of lifesaving equipment on the premises. Further, administratrix presented expert testimony that reasonable, curative measures could have feasibly been taken[.]

*Barr, supra* at 1379 (footnote omitted). In this appeal there is no evidence of projecting rocks below the water's surface, murky water, or the like. None of the conditions which made Devil's Pool dangerous apply to the accident scene here.

■ We believe more pertinent precedent is contained in *Livingston by Livingston v. Pennsylvania Power & Light Co.,* 609 F.Supp. 643, 649 (E.D.Pa.1985), *affirmed,* 782 F.2d 1030 (3rd Cir.Pa.1986). Citing Pennsylvania law, the *Livingston* court concluded that willfulness under section 477–6 contains two elements: (1) **actual knowledge** of a danger (2) that is **not obvious** to those entering the premises:

The Pennsylvania Supreme Court has indicated that willful conduct in this context consists of a failure to disclose "dangerous conditions known to it (the possessor of the premises) and **not likely to be discovered.**" *Kopp v. R.S. Noonan, Inc.,* 385 Pa. 460, 463, 123 A.2d 429 (1956) [possessor of premises not liable to gratuitous licensee for known danger except for willful or wanton injury] (Emphasis added [in original] ). This formulation of the law is the basis for the court's conclusion in *Hahn v. Commonwealth, supra,* [affirming summary judgment for United States on basis of RULWA immunity] that the Recreation Act had the effect of limiting a landowner's specific duty to persons entering his land for recreational purposes to **that** duty owed to a gratuitous licensee at common law. **Thus, willfulness under § 477–6 contains two ele-**ments: (1) **actual knowledge of a danger (2) that is not obvious to those entering the premises.**

*Livingston, supra* at 649 (first and second emphases in original; third emphasis added). On review, we find the district court's reasoning to be persuasive and consistent with Pennsylvania law. We adopt it as our own.

■ In this case, Appellants assert prior knowledge on the part of certain former employees of PPL that boaters congregated at a location called "Party Cove" and imbibed alcohol. However, Appellants' support for this claim is limited to selected excerpts from the deposition of former PPL employee Annalisa Black, in which she apparently had previously testified that she had heard "rumors," which were "never ... substantiated" of drinking at Party Cove. (Deposition of Annalisa Black, 3/29/10, at 14, 16 [excerpts]; *see also* Appellants' Brief, at 27–28;).

■ In their brief, Appellants also refer to a chain of e-mails from a year before the accident between Ms. Black, and a representative of the Pennsylvania Fish and Boat Commission (PFBC), (which had undisputed responsibility for law enforcement on the Lake), apparently produced on May 3, 2010 in response to Plaintiffs' [Appellants'] Second Request for the Production of Documents. Appellants cite to the Reproduced Record only. (*See* Appellants' Brief, at 28). Appellants do not refer to where this evidence appears in the certified record, in violation of Pa.R.A.P. 2119(c), reference to record, and 2119(d), synopsis of evidence. There is no entry in the docket for this cited material, and on independent review, we do not find any corresponding document in the certified record.

The fundamental tool for appellate review is the official record of the events that occurred in the trial court. To

ensure that an appellate court has the necessary records, the Pennsylvania Rules of Appellate Procedure provide for the transmission of a certified record from the trial court to the appellate court. The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal. Thus, an appellate court is limited to considering only the materials in the certified record when resolving an issue. In this regard, our law is the same in both the civil and criminal context because, under the Pennsylvania Rules of Appellate Procedure, any document which is not part of the officially certified record is deemed non-existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record. The emphasis on the certified record is necessary because, unless the trial court certifies a document as part of the official record, the appellate judiciary has no way of knowing whether that piece of evidence was duly presented to the trial court or whether it was produced for the first time on appeal and improperly inserted into the reproduced record. Simply put, if a document is not in the certified record, the Superior Court may not consider it.

*Commonwealth v. Preston,* 904 A.2d 1, 6–7 (Pa.Super.2006), appeal denied, 591 Pa. 663, 916 A.2d 632 (2007) (citations omitted). "Moreover, for purposes of appellate review, what is not in the certified record does not exist." *Commonwealth v. Garvin,* 50 A.3d 694, 700 (Pa.Super.2012).[13]

Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.

*Murphy, supra* at 429 (citation and quotation marks omitted).

On this record we discern no basis for concluding that the trial court abused its discretion in determining that Appellants failed to meet their burden of proof. The trial court properly decided as a matter of law that PPL enjoyed immunity from Appellants' claims under RULWA. No exception applies. The Federal Power Act does not preempt the traditional role of the state to determine tort liability, and specifically does not preempt RULWA. The trial court properly granted summary judgment.

Order affirmed.

---

13. In any event, as the reproduced record confirms, the correspondence cited concerns only whether boaters at Party Cove would be required to get a permit to have a band play on one of the vessels. Ms. Black notes complaints about noise and congestion. Alcohol is never mentioned.