J-S01028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RONALD MCLAUGHLIN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUNIATA COLLEGE | : | No. 824 MDA 2021 |

Appeal from the Order Entered May 11, 2021
In the Court of Common Pleas of Huntingdon County Civil Division at
No(s):  2019-01339

BEFORE: BOWES, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                **FILED: MARCH 11, 2022**

Appellant Ronald McLaughlin appeals *pro se* from the order granting the motion for summary judgment filed by Appellee Juniata College and denying Appellant's motion for partial summary judgment.  Appellant contends that material issues of fact exist regarding whether Appellee breached the parties' employment contract.  We affirm.

We adopt the facts set forth in the trial court's opinion.  Trial Ct. Op., 5/11/21, at 1-5.  To briefly summarize, Appellant was a tenured professor under an employment contract with Appellee.  The parties' employment contract is comprised of Appellee's (1) Faculty Handbook; (2) April 17, 2000 letter granting Appellant tenured status; and (3) August 30, 2018 letter

_____

[*] Retired Senior Judge assigned to the Superior Court.

confirming Appellant's employment for the 2018-2019 academic year. ***See***

Ex. M to Appellee's Suppl. Br. in Resp. to Appellant's Suppl. to Mot. for Summ.

J., 2/22/21 (Appellee's complete Faculty Manual); S.R.R. at 154b, 156b.[1]

Appellee's Faculty Handbook defines "sick leave" as follows:

### 2.13.1.2 Sick Leave

In case of illness or disability during the academic year on the part of regular, full-time faculty members, salary payments are made as follows:

a. During the first month of illness the eligible faculty member receives the full salary applicable at the time of the onset of the illness or disability.

b. After the first month of illness or disability the eligible faculty member receives 85% of the salary applicable for the period dependent upon his or her length of service at Juniata. During the first year of a faculty appointment the 85% salary payments will be made for one month beyond the first month; during the second year for two months; during the third year for three months; during the fourth year for four months; up to a maximum of five months for persons who have been at Juniata five years or more.

c. These sick leave benefits are not cumulative and are based on the number of weeks missed in any given academic year.

S.R.R. at 149b;[2] ***see also*** Ex. M to Appellee's Suppl. Br. in Resp. to Appellant's

Suppl. to Mot. for Summ. J., 2/22/21 (Appellee's complete Faculty Manual).

---

[1] We may cite to the parties' initial, amended, or supplemental reproduced record for the parties' convenience. We also cited to the reproduced record when there was no dispute as to whether a particular document was part of the certified record.

[2] As discussed below, one of the issues is whether the "sick leave" set forth herein is equivalent to "short term disability leave" or "medical leave."

The Faculty Manual does not explicitly reference unlimited **paid** leave, "short term disability leave," or "medical leave," but does permit **unpaid** leave for up to one year. *See* Ex. M to Appellee's Suppl. Br. in Resp. to Appellant's Suppl. to Mot. for Summ. J.; S.R.R. at 151b.

In 2017, students complained about Appellant's instruction, classroom behavior, and student interactions. Trial Ct. Op. at 2. Appellee investigated, substantiated the students' complaints, and as a result, attempted to introduce classroom observers into Appellant's classroom to evaluate Appellant's teaching performance. *Id.* at 2-4. Appellant disagreed with Appellee and did not cooperate with Appellee's attempts to have classroom observers. *Id.* at 4.

Shortly thereafter, Appellant proposed an accommodation under the Americans with Disabilities Act[3] (ADA), reasoning that because of his lupus,

---

[3] 42 U.S.C. § 12101-12213. In **Allen v. State Civil Servs. Comm'n**, 992 A.2d 924 (Pa. Cmwlth. 2010), the Court briefly summarized the ADA:

> if a person wants and/or needs a reasonable accommodation to successfully perform a job, one must first have a disability, one must then inform the employer of the existence of the disability, and to the extent that one wants/needs a reasonable accommodation related to the disability, one should request a reasonable accommodation. Thereafter, with the assistance of the employer, one must decide what would be a reasonable accommodation under the circumstances.

**Allen**, 992 A.2d at 931. Decisions of the Commonwealth Court are not binding on this Court but we may rely on them for their persuasive value. **NASDAQ OMX PHLX, Inc. v. PennMont Secs.**, 52 A.3d 296, 308 n.7 (Pa. Super.

*(Footnote Continued Next Page)*

he could not have classroom observers present while he taught. *Id.* at 5. Appellee responded that it could not agree to Appellant's proposed ADA accommodation because refusing classroom observers was "contrary to an essential function of [Appellant's] job" as a professor. *Id.*[4]

Eventually, on August 24, 2018, Appellee placed Appellant on "medical leave at full pay effective immediately, pending further review of [Appellant's] medical issues." *Id.* at 6; *see also* Ex. I to Appellee's Resp. to Appellant's Mot. for Partial Summ. J.; A.R.R. at 1a.[5] Subsequently, the parties continued to communicate regarding the proposed ADA accommodation and medical

_____

2012) (citations omitted). Similarly, although federal court decisions do not bind this Court, we follow the precedent of federal courts within the Third Circuit whenever possible. *See id.* at 303.

[4] Briefly, under the ADA, an employee must still be able to perform the essential functions of the job with or without the requested accommodation. *Gardner v. SEPTA*, 410 F. Supp. 3d 723, 739 (E.D. Pa. 2019).

[5] For the sake of completeness, we quote the relevant passages from Appellee's August 24, 2018 letter to Appellant:

> [Appellant's doctor] has opined that you [*i.e.*, Appellant,] can only work provided that there are no uninvited visitations from either administrators or faculty members [*i.e.*, the classroom observers]. . . . Effective teaching of [Appellee's] students is an essential function of your job as a professor. To permit the accommodation you request could affect the education of students. Therefore, since your requested accommodation is contrary to an essential function of your job, this accommodation will not be granted. In the best interest of you and your health, I am placing you on medical leave at full pay effective immediately, pending further review of your medical issues. . . .

A.R.R. at 1a.

leave. *See* Trial Ct. Op. at 7. On October 15, 2018, Appellee informed Appellant as follows:

> We also wish to confirm that your medical leave at full salary is being counted as your short term disability benefit under the Policy of the College. This short term disability benefit has a maximum benefit of six months at full salary. At the end of the six months, you will be eligible to file for long term disability through the insurance carrier of the College.

S.R.R. at 195b.[6]

On January 30, 2019, Appellee notified Appellant that his short term disability benefit would expire on February 28, 2019. *See* Trial Ct. Op. at 5-6; *see also* S.R.R. at 197b. Appellant's last paycheck was on February 28, 2019, and Appellee did not pay him on his subsequent pay date of March 15, 2019. *See* Trial Ct. Op. at 8.

As a result, on August 26, 2019, Appellant filed a complaint for breach of contract and wrongful termination. In relevant part, Appellant asserted that Appellee breached the employment contract by not paying him. Compl., 8/26/19, at ¶¶ 13, 15. Appellee filed an answer and new matter.

Discovery ensued, and Appellee deposed Appellant, who testified that under his employment contract, he "expected six years of medical leave with full pay and benefits as [his] ADA accommodation." S.R.R. at 117b. Appellant explained that he "expected to be paid" because he anticipated working for

---

[6] As quoted above, the Faculty Manual provides for full salary for one month and 85% salary for up to five months. *See* S.R.R. at 149b.

six more years, until 2024. *Id.* Appellant, however, also testified that he did not "know anything specifically in the faculty manual" providing for the right to be paid for six years. Ex. L, at 112, to Appellee's Suppl. Br. in Resp. to Appellant's Suppl. to Mot. for Summ. J., 2/22/21; *accord id.* at 92-93 (agreeing that nothing in the Faculty Manual permits non-working faculty to receive full pay and benefits).

On July 23, 2020, Appellant filed a motion for partial summary judgment on liability only, and Appellee filed a response in opposition. On February 4, 2021, Appellant filed a supplement, which contended that Appellee improperly modified his employment contract. Appellant's Suppl. to Mot. for Summ. J., 2/4/21, at 2. Appellee filed a response in opposition to Appellant's supplement. Appellee's Suppl. Br. in Resp. to Appellant's Suppl. to Mot. for Summ. J., 2/22/21.

On February 16, 2021, Appellee filed a cross-motion for summary judgment on all claims, and Appellant filed a response and a brief in opposition. In relevant part, Appellant countered that although he ceased classroom instruction, he continued working for Appellee, including research and other departmental duties. Appellant's Br. in Resp. to Appellee's Mot. for Summ. J., 3/18/21, at 1-4. On May 11, 2021, the trial court denied Appellant's motion for partial summary judgment and granted Appellee's cross-motion for summary judgment.

On June 10, 2021, Appellant timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial court filed a Rule 1925(a) opinion that incorporated its prior May 11, 2021 decision. The trial court's Rule 1925(a) opinion did not address whether Appellee improperly modified Appellant's employment contract by converting Appellant's medical leave into "sick leave." *See generally* Trial Ct. Op. at 1-15.

Appellant raises the following issues:

1. Should [the trial court's] ruling denying [Appellant's] motion for partial summary judgment be reversed?

2. Should [the trial court's] ruling granting [Appellee's] motion for summary judgment be reversed?

Appellant's Am. Brief at 2.[7]

We summarize Appellant's arguments together. First, Appellant argues that Appellee modified Appellant's employment contract by relieving him of all classroom instruction duties for the next six years. *Id.* at 5-6. He reasons that Appellee placed him on indefinite paid medical leave. *Id.* at 8-9. Based on this premise, Appellant then argues that Appellee improperly converted his indefinite paid medical leave into six months' of short term disability, which is

---

[7] This Court granted Appellant permission to file an amended brief, which we note violates Pa.R.A.P. 2119(a), which requires, among other items, that the argument "shall be divided into as many parts as there are questions to be argued." However, we decline to find waiver.

different from the "sick leave" under Section 2.13.1.2 of the Faculty Manual. *Id.*[8]

Second, Appellant summarizes evidence that in his view established that he continued to work for Appellee. *Id.* at 10. Appellant argues that if he was on "sick leave," then Appellee would have relieved Appellant "of all of his job duties," and not just classroom instruction. *Id.* Similar to his first argument, Appellant reasons that if Appellee had intended to place him on "sick leave," Appellee would have actually informed him that he was on "sick leave." *Id.* at 11. Appellant also claims that because he continued working for Appellee, it was not possible for him to "return to work." *Id.* In Appellant's view, Appellee "has presented no evidence to support its claim that [Appellant] was not working." *Id.* at 12-13. Therefore, "there was no genuine dispute regarding the fact that [Appellant] was working" for Appellee. *Id.* In sum, Appellant's arguments are premised on the parties' modification of the terms set forth in the Faculty Manual.

We are guided by the following law in reviewing an order resolving a motion for summary judgment:

---

[8] Appellee counters that Appellant waived that specific argument by not raising it in his Pa.R.A.P. 1925(b) statement. *See* Appellee's Am. Brief at 33. We decline to find waiver, however, because Appellant raised the argument in his supplement to his motion for summary judgment, and it is reasonably inferable from the issues presented in his Rule 1925(b) statement. *See* Appellant's Rule 1925(b) Statement; *see also* Appellant's Suppl. to Mot. for Summ. J. at 2.

Our standard of review is *de novo* and our scope of review is plenary. Summary judgment is appropriate where there is no genuine issue of material fact as to a necessary element of a cause of action that can be established by discovery or expert report. In reviewing an order granting a motion for summary judgment, an appellate court must examine the entire record in the light most favorable to the non-moving party and resolve all doubts against the moving party.

*Liberty Mutual Grp., Inc. v. 700 Pharmacy, LLC*, --- A.3d ---, ---, 2022 PA Super 19, 2022 WL 289547, *7 (Pa. Super. filed Feb. 1, 2022) (citations omitted and formatting altered).[9]

Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.

*Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001) (citation omitted and formatting altered).

"It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages."

---

[9] We add that "an appellate court is limited to considering only the materials in the certified record when resolving an issue." *Ruspi v. Glatz*, 69 A.3d 680, 691 (Pa. Super. 2013) (citation omitted). "[U]nless the trial court certifies a document as part of the official record, [this Court] has no way of knowing whether that piece of evidence was duly presented to the trial court or whether it was produced for the first time on appeal and improperly inserted into the reproduced record." *Id.* (citation omitted). Accordingly, to the extent Appellant refers this Court to documents outside of the certified record, we do not consider them. *See id.*

*Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of*

*Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (citation

omitted). We are also guided by the following:

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.

*Murphy*, 777 A.2d at 429 (citations omitted and formatting altered); *accord*

*Nicholas v. Hofmann*, 158 A.3d 675, 693 (Pa. Super. 2017). The terms and

conditions in a faculty handbook may be part of the employment contract

between a college and faculty. *See Murphy*, 777 A.2d at 420; *see also*

*Baker v. Lafayette College*, 504 A.2d 247, 249 (Pa. Super. 1986).

Further, in ascertaining and giving effect to the parties' intent, courts do

not require specific "magic words"[10] to bind the parties. *TTSP Corp. v. Rose*

*Corp.*, 217 A.3d 1269, 1279 n.10 (Pa. Super. 2019). For example, in *TTSP*,

the parties executed a contract that provided for arbitration even though the

clause at issue did not include the terms "arbitration" or "arbitrator." *Id.* at

---

[10] The phrase "magic words" generally refers to a perceived requirement that certain words must be explicitly stated to effectuate a particular construction, interpretation, or holding. *See generally F.A.A. v. Cooper*, 566 U.S. 284, 291 (2012).

1279. The **TTSP** Court construed the clause and held it contained "sufficient hallmarks inherent to an arbitration proceeding." **Id.** The **TTSP** Court explained that even though the clause did not include the "magic words" of "arbitration" or "arbitrator," those words were unnecessary to "obtain the benefits of an arbitration clause." **Id.** at 1279 n.10 (citation omitted and formatting altered).

The "burden of proving modification of a contract is carried by the party asserting the modification." **Trombetta v. Raymond James Fin. Servs., Inc.**, 907 A.2d 550, 558 (Pa. Super. 2006) (citations omitted). "A contract can be modified with the assent of both contracting parties if the modification is supported by consideration. Modification of a contract may be demonstrated by words, conduct, or both." **Id.** (citations omitted).

Finally, as relevant here, the ADA requires an employer to make reasonable accommodations to permit a disabled employee to perform an essential job function. **See Garner v. Sch. Dist. of Phila.**, 63 F. Supp. 3d 483, 488-89 (E.D. Pa. 2014). An employee cannot compel an employer to provide a specific reasonable accommodation if there is another alternative. **See Solomon v. Sch. Dist. of Phila.**, 882 F. Supp. 2d 766, 779 (E.D. Pa. 2012). Paid or unpaid medical leave may be a reasonable accommodation. **See Garner**, 63 F. Supp. 3d at 492; **accord Dreibelbis v. Cty. of Berks**, 438 F. Supp. 3d 304, 317 (E.D. Pa. 2020). Unlimited paid medical leave, however, is not a reasonable accommodation. **See Garner**, 63 F. Supp. 3d

at 492 (holding that "a leave of absence for an indefinite duration is not a reasonable accommodation" because "leave time must enable the employee to perform his or her essential job functions in the near future" (citations omitted)).

Instantly, Appellant's arguments presume that Appellee modified the employment contract by granting him indefinite paid medical leave, and then converting that leave into six months' of short term disability, which is different from the "sick leave" set forth in the Faculty Manual. In the context of summary judgment, Appellant has the burden of identifying sufficient evidence of contract modification. **See Murphy**, 777 A.2d at 429; **Trombetta**, 907 A.2d at 558. Appellant's claim is based on Appellee using the phrases "medical leave" and "short term disability" in its initial communications to him, rather than the phrase "sick leave" as set forth in the Faculty Manual. Similar to the facts in **TTSP**, in which the contract clause at issue did not include the terms "arbitration" or "arbitrator," Appellee's August 24, 2018 and October 15, 2018 communications did not include the phrase "sick leave." **Cf. TTSP**, 217 A.3d at 1279. We agree with the reasoning of the trial court and the **TTSP** Court that it was unnecessary for Appellee to use the "magic phrase" of "sick leave" in its communications with Appellant. **See** Trial Ct. Op. at 12-13; **cf. TTSP**, 217 A.3d at 1279 n.10. Section 2.13.1.2 of the Faculty Manual states that a faculty member receives full salary "[d]uring the first month of illness" and receives 85% of the salary "[a]fter the first

month of illness or disability." *See id.* To paraphrase the **TTSP** Court's reasoning, Section 2.13.1.2 of the Faculty Manual contained "sufficient hallmarks inherent" to a clause imposing "medical leave" or "short term disability" benefit. *Cf. id.* In sum, although Appellee's initial communications with Appellant did not use the phrase "sick leave," we agree with the trial court that no material issues of fact exist that Appellee placed Appellant on "sick leave" under the Faculty Manual. *See* Trial Ct. Op. at 14.[11]

To the extent Appellant argues that Appellee modified the employment contract by relieving him of all classroom instruction duties, he did not identify any evidence of consideration. *See Trombetta*, 907 A.2d at 558; *see also Murphy*, 777 A.2d at 429. In any event, it was Appellant who requested an ADA accommodation of no classroom observers, which Appellee rejected because it was contrary to an essential function of his job: effective classroom instruction of students. *See* A.R.R. at 1a. Because Appellant could not perform an essential function of his job, Appellee placed Appellant on "medical leave." *See id.* Notwithstanding Appellee's use of the phrase "medical leave," no material issues of fact exist that the only possible paid leave for sickness

---

[11] It may have been preferrable for Appellee to use the terms actually set forth in the Faculty Manual to avoid any potential confusion. But the main issue in this case is whether Appellee was contractually obligated to pay Appellant for six years of sick leave. We add that the issue arose because of Appellant's refusal to permit classroom observers and Appellee's refusal to allow Appellant to teach without the presence of such observers.

or disability under the parties' employment contract was the "sick leave" set forth at Section 2.13.1.2 of the Faculty Manual. *See* Trial Ct. Op. at 14. For these reasons, Appellant is due no relief on his claim that Appellee modified the employment contract by releasing him from classroom instruction.

With respect to Appellant's claim that he continued working for Appellee, the claim is premised on a belief that a contract modification actually occurred and that he would be paid after February 28, 2019, when his six months of paid sick leave expired. ***See generally Trombetta***, 907 A.2d at 558. On this record, Appellant did not provide sufficient evidence of any such contract modification, nor did he prove that the contract clause in question permitted continued payment after February 28, 2019. ***See id.***; ***see also Murphy***, 777 A.2d at 429. Accordingly, after reviewing the record in the light most favorable to Appellant, the trial court did not err in granting summary judgment in favor of Appellee and denying Appellant's motion for partial summary judgment on liability only. ***See Murphy***, 777 A.2d at 429; ***Liberty Mutual Grp.***, 2022 WL 289547 at *7.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/11/2022