J-S65033-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PATRICK JOSEPH MCLAINE, | |
| Appellee | No. 757 EDA 2014 |

Appeal from the Order Entered February 4, 2014
in the Court of Common Pleas of Lehigh County
Criminal Division at No.: CP-39-CR-0001677-2013

BEFORE:  PANELLA, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED APRIL 13, 2015**

The Commonwealth appeals from the trial court's order[1] granting the omnibus pre-trial motion, including the motion for *habeas corpus* relief in favor of Appellee, Patrick Joseph McLaine,[2] and dismissing the underlying charges: theft by unlawful taking,[3] receiving stolen property,[4] theft by failure

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] "An order granting a defendant's motion for *habeas corpus* relief based on insufficiency of the evidence is a final order appealable by the Commonwealth."  **Commonwealth v. Fountain**, 811 A.2d 24, 25 n.1 (Pa. Super. 2002) (citations omitted).

[2] Appellee McLaine's surname is spelled inconsistently in the record before us.  We adopt the predominant spelling, as used by McLaine himself, and have changed the caption accordingly.

[3] 18 Pa.C.S.A. § 3921.

[4] 18 Pa.C.S.A. § 3925.
*(Footnote Continued Next Page)*

to make required disposition of funds,[5] and criminal conspiracy.[6]  The trial

court found that the Commonwealth failed to present sufficient *prima facie*

evidence to substantiate each of the elements of the crimes charged.  This

appeal is a companion case to the appeal in **Commonwealth v. Kearns**,

No. 766 EDA 2014.  Because the question raised by the Commonwealth in

both appeals is identical, and the trial court addresses both appeals in one

opinion, we will address both appeals together, albeit in separate but

essentially matching decisions.[7]  With the exception of the charge of

receiving stolen property, we conclude under our standard of review that the

Commonwealth did meet its burden to establish both the commission of the

crimes alleged, and that Appellees committed the offenses.  Accordingly, we

affirm in part, vacate in part, and remand for disposition in accordance with

the legal principles discussed in this decision.

At all times relevant to both of the cases on appeal, Robert J. Kearns

was the president, and Patrick Joseph McLaine was the treasurer of

_(Footnote Continued)_ ───────────

[5] 18 Pa.C.S.A. § 3927.

[6] 18 Pa.C.S.A. § 903.

[7] The arguments raised by the co-Appellees are also essentially the same. Both argue that the Commonwealth failed to prove they "obtained the property of another" or that they used Coplay's money for their personal benefit, and maintain that the trial court acted properly in granting *habeas corpus* and dismissing all charges. (**See** Appellee McLaine's Brief, at 10-27; Appellee Kearns' Brief, at 8-13).

Municipal Energy Managers, Inc. (also referred to as MEM); they were also the sole shareholders.[8]

We derive the factual history from the notes of testimony of the argument on Appellees' omnibus pre-trial motion on October 29, 2013, including admissions and stipulations, and the trial court opinion filed February 4, 2014.[9]

_____

[8] We recognize that Appellee McLaine argues that Kearns was the front man for the organization, who signed the underlying contract at issue, which he (McLaine) did not sign except as a witness, and therefore he had no "legal obligation" respecting the funds at issue. (Appellee's Brief, at 23). McLaine's argument is unsupported by authority. (*See id.*). We find it both undeveloped and unpersuasive. Viewed in the light most favorable to the Commonwealth, the record confirms relevant activity by both principals. (*See*, *e.g.*, N.T. Preliminary Hearing, 4/09/13 at 30 (PPL dealt with both Kearns and McLaine)). Under our standard of review, the distinction McLaine seeks to draw is not material to our disposition, and we decline to address it further.

[9] The trial court advises that the notes of testimony of the preliminary hearing before Magisterial District Judge Robert C. Halal, on April 9, 2013, are unavailable. (*See* Order, 8/04/14, at 1). The parties stipulated to admission of the exhibits presented originally in the preliminary hearing, and they were admitted without objection for this Court's review as a part of a supplemental record. (*See id.* at 2). The Commonwealth has included a copy of the notes of testimony in its reproduced record. However, it is axiomatic that insertion in the reproduced record of a document does not substitute for inclusion in the certified record. *See Ruspi v. Glatz*, 69 A.3d 680, 691 (Pa. Super. 2013) (citing *Commonwealth v. Preston*, 904 A.2d 1, 6–7 (Pa. Super. 2006), *appeal denied*, 591 Pa. 663, 916 A.2d 632 (2007)). Independent efforts by this Court to obtain a transcript of the preliminary hearing for inclusion in a supplemental record have been unsuccessful.

On November 30, 2008, MEM entered into a "Guaranteed Turnkey Performance Agreement" with the borough of Coplay, Pennsylvania. (**See** Commonwealth Exhibit C-1). While the contract is voluminous, with many provisions and exhibits, the crux of the agreement was that MEM would act as agent for Coplay in the negotiation for and the purchase of streetlights from PPL Electric Utilities (PPL), and perform related tasks. Municipalities which purchased streetlights from PPL under this program received a reduced utility rate.

In June of 2009, pursuant to the turnkey agreement, Coplay issued two checks payable to MEM: one on June 8, 2009, for $50,000.00, and one on June 15, 2009, for $110,182.00, for an aggregate total of $160,182.00. (**See** Commonwealth's Exhibit C-2, and C-3, respectively). These checks represented the initial commencement fee for the streetlights program, pursuant to the turnkey agreement.

There is no dispute that the two Coplay checks were deposited into MEM's general business account, commingled with other MEM funds, and that both Appellees wrote checks on the account. The funds were not escrowed for the benefit of Coplay. The funds were used to pay off MEM debts to PPL unrelated to the Coplay agreement, for general MEM business purposes and to pay bonus checks for Appellees. (**See** N.T. Motion, 10/29/13, at 24). The funds were never paid to PPL for Coplay.

PPL had an established procedural scheme for the streetlights program, reduced to writing in 2003. First, it required a formal written

notice of interest by the municipality. On receipt of the notice of interest, PPL sent out a "ball park" estimate of costs. However, it would not go further, with on-site inspections, initial surveys and the like until it received a deposit from the inquiring municipality. On receipt of a down-payment, PPL would also engage in certain preparatory activities, which it referred to as "make ready work." PPL then provided its own contract to the municipality. MEM never submitted a deposit for Coplay and PPL did not move forward with the initial survey or prepare a contract.

Despite PPL's formal requirement that it perform the make ready work, it sometimes granted waivers and, specifically, on occasion had previously permitted MEM to perform, or subcontract for the performance of, at least some make ready work for other municipalities.

Disagreements arose between PPL and MEM. In June of 2009, PPL informed MEM that it would not sign any proposed contracts for streetlight sales to any of the municipalities represented by MEM in the form PPL had previously used with eleven (presumably other) municipalities.[10] However, PPL did not complete a revised contract until July of 2010. In June of 2010, on learning that MEM was engaging in make ready work, PPL issued a stop

---

[10] We note for purposes of clarity and completeness that the instant appeals are two out of a total of nine appeals filed with this Court from four different criminal cases in four different counties involving the same co-defendants, Patrick Joseph McLaine and Robert J. Kearns, and the same types of crimes, theft of funds in government contracts.

work order, directing MEM to cease work on any PPL owned streetlights unless PPL had executed a written contract specifically authorizing that work.

Further, PPL apparently advised that if MEM or any of the municipalities it represented filed a rate discrimination complaint with the Public Utilities Commission, or other legal action against PPL, PPL would not negotiate the acquisition of any streetlight systems with that municipality while it was defending the other action. PPL did not receive the required letter of interest until July of 2010.

Around early 2012, Coplay officials complained to the law firm which acted as solicitor for the borough that nothing had happened on the streetlights acquisition project, and they were unable to get information from MEM.[11] Counsel began investigating. By April of 2012, the MEM checking account had "bottom[ed] out" at zero.

There is no dispute that neither Appellee (nor MEM) completed performance of the contract with Coplay. The streetlights were never purchased. (*See* Appellee McLaine's Brief, at 20). PPL still owns the streetlights. (*See* Trial Court Opinion, 2/04/14, at 4). Coplay counsel contacted the office of the District Attorney of Lehigh County, who filed the

_____

[11] The turnkey agreement originally specified an estimated completion date of one year after the execution of the contract.

charges previously noted.[12]   A preliminary hearing occurred on April 9, 2013.

The magisterial district judge found a *prima facie* case as to both Appellees.

On August 2, 2013, Appellee McLaine filed an omnibus pre-trial

motion, including a motion for a writ of *habeas corpus*.[13]   After a hearing on

October 29, 2013, the trial court granted the motion on February 4, 2014.[14]

This timely appeal followed.[15]

The Commonwealth presents one omnibus question for our review:

> Did the trial court manifestly abuse its discretion in granting [Appellee's] Motion to Dismiss (*Habeas Corpus*) when the evidence and reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth, established a

_____

[12] Appellees were first charged with theft by unlawful taking, theft by failure to make required disposition of funds, and conspiracy, on or about April 9, 2013.   The Commonwealth filed an information on May 2, 2013, adding another count of theft by unlawful taking, and receiving stolen property.

[13] In addition to the motion for *habeas corpus*, Appellee included motions to dismiss and/or join pursuant to compulsory joinder, a motion to dismiss due to double jeopardy, and a motion to sever.  (**See** Omnibus Pre-Trial Motion, 8/02/13, at 1).  On October 12, 2013 the trial court granted the motion of appointed counsel for defendant/Appellee Kearns to join the omnibus pre-trial motion previously filed by counsel for defendant/Appellee McLaine. (**See** Trial Ct. Op., at 2-3).

[14]  Although the order ostensibly granted the entire motion without qualification, the trial court opinion confirms that the order was based on its finding of insufficient evidence to substantiate the charges, and the remaining motions were not addressed.  (**See** Trial Ct. Op., at 17).

[15] The Commonwealth filed a statement of errors on March 26, 2014.  **See** Pa.R.A.P. 1925(b).   The trial court filed an order on March 26, 2014, referencing its opinion and order of February 4, 2014.   **See** Pa.R.A.P. 1925(a).

*prima facie* case with regards to all of the charges — *i.e.*, Theft by Unlawful Taking (18 Pa.C.S.A. § 3921); Receiving Stolen Property (18 Pa.C.S.A. § 3925); Theft by Failure to Make Required Disposition of Funds (18 Pa.C.S.A. § 3927); and Criminal Conspiracy (18 Pa.C.S.A. § 903)?

(Commonwealth's Brief, at 7).

The Commonwealth argues that the trial court erred in granting the motion for *habeas corpus* and dismissing the charges. (**See** Commonwealth's Brief, at 12). It maintains that the trial court ignored the proper standard of review by failing to evaluate the evidence in the light most favorable to the Commonwealth. We agree.

Our standard of review is well-settled.

> The decision to grant or deny a petition for writ of *habeas corpus* will be reversed on appeal only for a manifest abuse of discretion. It is settled that a petition for writ of *habeas corpus* is the proper means for testing a pre-trial finding that the Commonwealth has sufficient evidence to establish a *prima facie* case. Although a *habeas corpus* hearing is similar to a preliminary hearing, in a *habeas corpus* proceeding the Commonwealth has the opportunity to present additional evidence to establish that the defendant has committed the elements of the offense charged.
>
> A *prima facie* case consists of evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime. The Commonwealth need not prove the defendant's guilt beyond a reasonable doubt. Rather, the Commonwealth must show sufficient probable cause that the defendant committed the offense, and the evidence should be such that if presented at trial, and accepted as true, the judge would be warranted in allowing the case to go to the jury.

***Commonwealth v. Black***, ___ A.3d ____, 2015 WL 151536, at *6 (Pa. Super. filed January 13, 2015) (quoting ***Fountain***, ***supra*** at 25–26).

"The question of the evidentiary sufficiency of the Commonwealth's p*rima facie* case is one of law as to which this Court's review is plenary." ***Commonwealth v. Huggins***, 836 A.2d 862, 865 (Pa. 2003), *cert. denied*, 541 U.S. 1012 (2004). In a direct appeal, "[i]t is well settled that a defendant's conviction may be sustained on the basis of circumstantial evidence alone, provided that such evidence is of sufficient quantity and quality to establish guilt beyond a reasonable doubt." ***Commonwealth v. Bhojwani***, 364 A.2d 335, 338 (Pa. Super. 1976) (citations omitted)*.*

Here, the Commonwealth first argues that it presented sufficient evidence to establish all the elements of theft by failure to make required disposition of funds received. (***See*** Commonwealth's Brief, at 13-22).

Our Crimes Code defines the offense of theft by failure to make required disposition of funds received as follows:

> **(a) Offense defined.**—A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

18 Pa.C.S.A. § 3927(a).

A defendant is guilty of theft by failure to make required disposition of funds received if he obtains property upon agreement or subject to a known legal obligation to make specified payment or other disposition of the property, and intentionally deals with the property as his own and fails to make the required payment or disposition.

***Commonwealth ex rel. Lagana v. Commonwealth Office of Atty. Gen.***, 662 A.2d 1127, 1130 (Pa. Super. 1995). Similarly,

[T]he four elements necessary to complete the crime [of theft by failure to make required disposition of funds received] are:

1. The obtaining of property of another;

2. Subject to an agreement or known legal obligation upon the recipient to make specified payments or other disposition thereof;

3. Intentional dealing with the property obtained as the defendant's own; and

4. Failure to make the required disposition of the property.

***Commonwealth v. Austin***, 393 A.2d 36, 38 (Pa. Super. 1978) (citing ***Commonwealth v. Crafton***, 367 A.2d 1092 (Pa. Super. 1976), *opinion corrected*, 599 A.2d 1353, 1353 (Pa. Super. 1991)); (***see also*** Trial Ct. Op., at 8-9).

Here, it is undisputed that Appellee McLaine, with Appellee Kearns, obtained the money from Coplay subject to a known (and contractually specified) legal obligation to purchase streetlights for Coplay and perform related negotiating and support services.

Additionally, they plainly dealt with the money as their own, concededly commingling the funds with those of their business, using them

to pay MEM obligations unrelated to Coplay, and generally using some or all of the money to finance their business operations, as well as pay bonuses to themselves, until the business checking account "bottomed out" at zero, with nothing paid on behalf of Coplay, and nothing left to make good on the obligation to Coplay.

Nevertheless, the trial court found that the Commonwealth failed to establish the first element of section 3927, that Appellees obtained the property of another.[16] (**See** Trial Ct. Op., at 9-13). In support, the court cites **Commonwealth v. Austin**, 393 A.2d 36 (Pa. Super. 1978). In pertinent part, the **Austin** court relied on caselaw construing a since-superseded statute on fraudulent conversion, (**see Austin**, **supra** at 38) (finding that "the acceptance of advance money on a construction contract is

_____

[16] The Crimes Code defines "property of another" as follows:

> **"Property of another."** Includes property in which any person other than the actor has an interest which the actor is not privileged to infringe, regardless of the fact that the actor also has an interest in the property and regardless of the fact that the other person might be precluded from civil recovery because the property was used in an unlawful transaction or was subject to forfeiture as contraband. Property in possession of the actor shall not be deemed property of another who has only a security interest therein, even if legal title is in the creditor pursuant to a conditional sales contract or other security agreement.

18 Pa.C.S.A. § 3901.

[not] the property [o]f another") (citing **Commonwealth v. Bartello**, 301 A.2d 885 (Pa. Super. 1973)).

The trial court adopts **Austin**'s reasoning: "It seems apparent that in a single contract providing for certain services at certain prices that where there is a transfer of money, within the contract price, even in advance of the due date, that title as well as possession passes and only a contractual obligation remains." **Austin**, **supra** at 38-39) (quoting **Bartello**); (**see** Trial Ct. Op., at 10).

Here, first and foremost, we are constrained to conclude that the trial court failed to review the evidence **in the light most favorable to the Commonwealth** for a *prima facie* case, not guilt beyond a reasonable doubt. **See Black**, **supra** at *6; **Fountain, supra** at 25–26. In relying on **Austin**, and endeavoring to distinguish the Commonwealth's citation to **Crafton**, **supra** and **Bhojwani**, **supra**, the trial court, in effect, engaged in an impermissible weighing of the evidence, rather than reviewing whether the evidence presented established all of the elements of the crimes charged. The trial court engaged in an analysis which sought to determine if viable defenses existed to the crimes charged. It should have confined its inquiry to determining whether the evidence presented, if accepted as true, would suffice to send the issue to a jury. We are constrained to conclude that the trial court abused its discretion.

Secondly, in so doing, the trial court relied on caselaw reviewing direct appeals from judgments of sentence, disregarding the even narrower standard of review for appeals from the granting or denial of *habeas corpus*. *See Black*, *supra* at *6.

Thirdly, even on the merits, **Austin** is plainly distinguishable. **Austin** addressed the conviction of a construction contractor for theft by unauthorized disposition of the advance money on a home repair and remodeling contract. The evidence was undisputed that the contractor, who had taken an advance payment of $2,495.00 "for materials," (plus an additional payment of $800 "for labor"), worked for about two months on the project until realizing he had underestimated the cost of completion; he then discontinued work on advice of counsel. **See Austin**, **supra** at 37-38. He had spent $1,243.00 of the advances. **See id.**

Notably, here, the contract was **not** for construction, let alone home repairs, and there is no evidence that Appellees worked diligently for months on the project, or that they underestimated construction costs. Furthermore, far from having money left over, these Appellees entirely dissipated all of the cash deposited in their business checking account, including all of the funds provided by Coplay.

Still, the trial court agreed with Appellees' counsel that their "make ready work," albeit unsanctioned by PPL, and other incidental preparatory activities, constituted "partial performance." (Trial Ct. Op., at 13). Other

than the implied analogy to **Austin**, the trial court offers no authority in support of its supposition.  We conclude that partial performance, even if assumed, does not negate any of the elements of theft by failure to make required disposition of funds received.  Therefore, it does not preclude the finding of a *prima facie* case.  **See e.g.**, **Commonwealth v. Edwards**, 582 A.2d 1078, 1086 (Pa. Super. 1990), *appeal denied*, 600 A.2d 1258 (Pa. 1991) (theft by failing to make legally required disposition of funds proven by evidence appellant intentionally converted **some** proceeds of construction loan to his own use by paying off old debts, double dipping on transportation expenses, and pocketing money from corporate general contractor; distinguishing **Austin**; judgment of sentence affirmed).

Finally, on this issue, we note that the trial court's analysis overlooks subsequent case law which distinguishes **Austin**, substantially curtailing its import beyond its facts.  **See id.**; **see also Commonwealth v. Robichow**, 487 A.2d 1000, 1003 (Pa. Super. 1985), *appeal dismissed*, 508 A.2d 1195 (Pa. 1986) (evidence clearly established advance money fraudulently obtained at inception of contracting, title did not pass to appellant, and appellant's possession of the money was property of another, distinguishing **Austin**; judgment of sentence affirmed).  We are constrained to conclude that the trial court misconceived the applicable law and abused its discretion. The Commonwealth's claim merits relief.

Next, the trial court maintains that the Commonwealth failed to present *prima facie* evidence that Appellees intended to deal with the property as their own, the "third" element cited in **Austin**. (**See** Trial Ct. Op., at 14-15). Once again, the trial court relies exclusively on **Austin**, **supra**. We are constrained to conclude its reliance is misplaced.

"In evaluating whether the Commonwealth has made out its *prima facie* case, criminal intent may be inferred from circumstantial evidence." **Lagana**, **supra** at 1129-30 (citations omitted).

Here, the Commonwealth presented evidence that Appellees did not inform Coplay of the status of the project, and did not respond to Coplay's inquiries. Furthermore, Appellees used the funds from Coplay for their own concededly unrelated purposes, until their general business account was entirely dissipated. Viewed in the light most favorable to the Commonwealth, this evidence is more than ample to prove intent to deal with the property as their own, the third element of the offense.

Next, the trial court addresses theft by unlawful taking[17] and receiving stolen property,[18] together. (**See** Trial Ct. Op., at 15-16). So does the

---

[17] **Theft by unlawful taking or disposition:**

> (a) Movable property.—A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof.

18 Pa.C.S.A. § 3921(a).

- 15 -

Commonwealth. (*See* Commonwealth's Brief, at 22-25). In an abbreviated analysis of one paragraph comprising three sentences, the court adopts by reference its prior reasoning that the Commonwealth failed to prove Appellees obtained the property of another. The court offers no additional authority. (*See* Trial Ct. Op., at 15-16). We reject this analysis for the reasons already noted. We conclude that the Commonwealth established a *prima facie* case of theft by unlawful taking.

Nevertheless, on independent review, we conclude that the Commonwealth failed to develop an argument that it introduced sufficient evidence to establish a *prima facie* case of receiving stolen property. (*See* Commonwealth's Brief, at 22-25). After its discussion of the sufficiency of the evidence for theft by unlawful taking, the Commonwealth adds a single

*(Footnote Continued)* ——————————

[18] **Receiving stolen property**:

> (a) Offense defined.—A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

> (b) Definition.—As used in this section the word "receiving" means acquiring possession, control or title, or lending on the security of the property.

18 Pa.C.S.A. § 3925(a), (b).

sentence: "Similarly, a *prima facie* showing of receiving stolen property has been made." (***Id.*** at 25).

The Commonwealth fails to develop an argument or provide supporting authority for its position. ***See Commonwealth v. D'Amato***, 856 A.2d 806, 814 (Pa. 2004) (concluding one-sentence argument was so undeveloped as to be functional equivalent of no argument at all; issue waived); ***see also*** Pa.R.A.P. 2119(a), (b); ***Commonwealth v. Rohrer***, 719 A.2d 1078, 1079 n.1 (Pa. Super. 1998); ***Commonwealth v. Montini***, 712 A.2d 761, 769 (Pa. Super. 1998) (Johnson, J., concurring) ("we may not act as appellate counsel, nor may we advocate positions not properly presented to us on appeal"). Accordingly, this claim is waived. For this reason, we affirm the trial court's dismissal of the charge of receiving stolen property.

Finally, the trial court summarily dismisses the charge of conspiracy,[19] reasoning generally that the Commonwealth presented no evidence of the

---

[19] **Criminal conspiracy:**

> **(a) Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

*(Footnote Continued Next Page)*

elements of conspiracy beyond "a clear association" between the two Appellees, and their actions as officers of MEM. (Trial Ct. Op., at 16). Again, the trial court fails to view the evidence in the light most favorable to the Commonwealth, together with all reasonable inferences. Moreover, the record does not support the trial court's reasoning, and the trial court's reasoning does not support its conclusions.

> To prove criminal conspiracy, the Commonwealth must show a defendant entered into an agreement to commit or aid in an unlawful act with another person; that he and that person acted with a shared criminal intent; and that an overt act was taken in furtherance of the conspiracy. 18 Pa.C.S.A. § 903. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Therefore, **where the conduct of the parties indicates that they were acting in concert with a corrupt purpose in view, the existence of a criminal conspiracy may properly be inferred**. This [C]ourt has held that the presence of the following non-exclusive list of circumstances when considered together and in the context of the crime may establish proof of a conspiracy: (1) an association between alleged conspirators, (2) knowledge of the commission of the crime, (3) presence at the scene of the crime, and (4) participation in the object of the conspiracy.

***Commonwealth v. Kinard***, 95 A.3d 279, 293 (Pa. Super. 2014) (*en banc*) (emphasis added) (case citations and internal quotation marks omitted); ***see also Commonwealth v. Lawson***, 650 A.2d 876, 880 (Pa. Super.

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

18 Pa.C.S.A. § 903(a)(1), (2).

1994), *appeal denied*, 655 A.2d 985 (Pa. 1995) (Commonwealth presented *prima facie* case against defendant for theft by deception and criminal conspiracy by testimony at *habeas corpus* proceeding).

Here, in the totality of the circumstances, viewed in the light most favorable to the Commonwealth, we conclude that the evidence presented was sufficient for a trial court to let the charge of conspiracy go forward to a jury. Both Appellees participated in the negotiations with Coplay and interacted with PPL. Both wrote checks on the corporate account. Both wrote checks to themselves. Therefore, the Commonwealth established an issue for the jury of whether Appellees conspired to take funds received from Coplay for payment to PPL and diverted them for their own benefit. Accordingly, the Commonwealth presented sufficient evidence to establish a *prima facie* case of criminal conspiracy. The trial court erred in granting *habeas corpus* and dismissing the conspiracy charge.

We emphasize for clarity that under our standard of review, on the record before us we make no judgment as to Appellees' guilt or innocence. We simply hold that the Commonwealth presented sufficient evidence to make out a *prima facie* case for each of the crimes charged, except for receiving stolen property.

Order affirmed on charge of receiving stolen property. In all other respects, order vacated. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/13/2015