J-A08011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

JOSEPH CAMPISI, JR.,

        Appellant

        v.

CARMELLA V. CAMPISI,

        Appellee

        v.

CHESAPEAKE APPALACHIA, L.L.C.,

        Appellee

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 1326 MDA 2014

Appeal from the Judgment Entered September 18, 2014
In the Court of Common Pleas of Bradford County
Civil Division at No(s): 11 QT 000347

BEFORE:  SHOGAN, WECHT, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 28, 2015**

Appellant, Joseph Campisi, Jr., appeals from the judgment entered in the Court of Common Pleas of Bradford County.  We affirm.

On October 13, 1981, Appellant, his father, Joseph Campisi, Sr., and Appellee, Carmella V. Campisi ("Carmella"), the wife of Joseph Campisi, Sr. and mother of Appellant, purchased seventy-plus acres in Albany Township, Bradford County.  Deed, 10/13/81, at 1-4.  The deed provided that title to the property was held as a one-half interest in favor of Appellant and a one-

---

[*]  Retired Senior Judge assigned to the Superior Court.

half interest in favor of Joseph Campisi, Sr. and his wife, Carmella. ***Id.***; N.T., 12/10/13 A.M. Session, at 49; N.T., 12/10/13 P.M. Session, at 35-37.

Appellant maintains that after the death of his father in May 2005, Carmella expressed her desire to sell the property. N.T., 12/10/13 P.M. Session, at 50. Appellant wanted to keep the property because he and his family used it, and he convinced Carmella not to sell it. ***Id.*** at 50. Both parties, he asserts, agreed to investigate the possibility of gas leases for the property. N.T., 12/10/13 P.M. Session, at 49-51.

Chesapeake Appalachia, L.L.C. ("Chesapeake") conducted testing on the property. As a result of the test, Chesapeake issued a check to the parties in the approximate amount of $7,300.00. N.T., 12/10/13 P.M. Session, at 51. The parties agreed that the funds received from the gas testing were used to make repairs to the property. ***Id.*** at 51-52.

On June 15, 2007, a "paid-up oil and gas lease" with Chesapeake was executed. Paid-Up Oil & Gas Lease, 6/15/07, at 1-4. It was a five-year lease and provided for Appellant and Carmella to receive royalties. ***Id.***[1]

Appellant avers that after receiving a few royalty payments, the checks ceased, and as a result, Appellant contacted Chesapeake. N.T.,

---

[1] The original lease referred to "Joseph Campisi and Carmella V. Campisi, husband and wife" as the Lessors. Paid-Up Oil and Gas Lease, 6/15/07, at 2. A lease modification was subsequently executed, which clarified that Appellant and Carmella were not husband and wife, and that Carmella was a widow. Lease Modification, 9/4/09, at 2.

12/10/13 PM session, at 81-82.  Chesapeake advised Appellant that they could not provide any information to Appellant and that Appellant should contact an attorney.  *Id.*  Appellant contacted an attorney and conducted a title search and learned of a deed dated March 12, 1992, which purported to convey the property to Appellant's parents.  Deed, 3/12/92, at 1-3; N.T., 12/10/13 P.M. Session, at 83-87.  Appellant asserts that he had no knowledge of this deed prior to the title search and contends that the deed was forged.  N.T., 12/10/13 P.M. Session, at 83-87.

Carmella, on the other hand, asserts that after a falling out between Appellant, Carmella and Joseph Campisi, Sr., Appellant executed a deed dated March 12, 1992, thereby selling his one-half interest in the property to Carmella and his father.  N.T., 12/10/13 A.M. Session, at 59.  An independent witness, the lawyer handling the deed transaction, Attorney D'Ambrosio, testified at trial that although he did not remember this specific transaction, it was his consistent practice to require all sellers to sign a deed in his presence.  N.T., 12/10/13 P.M. Session, at 8-21.

Carmella also maintains that, after the death of Joseph Campisi, Sr. in 2005, she acquiesced to Appellant's urging to have the property tested for gas deposits and authorized Appellant to have the property tested.  N.T., 12/10/13 A.M. Session, at 51-52.  Carmella argues that, instead of simply having the test performed, however, Appellant negotiated and signed a "paid-up oil and gas lease" with Chesapeake for the property without

informing her. *Id.* at 79-80. Carmella claims that she had no knowledge of the lease until she contacted Chesapeake. *Id.* at 58-62. Upon her inquiry with Chesapeake, all royalty payments were halted and held in escrow pending the outcome of the dispute.[2]

Appellant initiated the instant action in September of 2011 against Carmella and Chesapeake. Appellant pled five separate counts including: Count I - Quiet Title; Count II - Declaratory Judgment; Count III - Interpleader (against Chesapeake Appalachia, LLC); Count IV - Breach of Contract (against Chesapeake Appalachia, LLC); and Count V - Conversion. Complaint, 9/12/11, at 1-10.

At a pretrial conference on December 9, 2013, the parties signed a consent motion that released Chesapeake from the case. Order, 12/9/13, at 1. On December 10, 2013, Appellant filed a motion seeking to add the following counts against Carmella: profit-a-*prendre*, breach of contract, and unjust enrichment. The trial court granted the motion in part and denied the motion in part, allowing only the count for breach of contract. Order, 12/11/13, at 1.

On December 11, 2013, after trial, the jury returned a verdict in favor of Carmella. The jury specifically determined that a signature on the 1992

---

[2] Evidence of record also establishes that Carmella executed a ratification of the oil and gas lease, in which she ratified and confirmed the lease. Ratification of the Oil and Gas Lease, 6/15/07, at 1-2.

- 4 -

deed was not a forgery and that there was no oral agreement between Appellant and Carmella regarding the division of the proceeds and royalties of the oil and gas lease. Verdict Slip, 12/11/13, at 1. Judgment in favor of Carmella was entered on the same date. Order, 12/11/13, at 1. Further, the trial court determined that the title was quieted and the March 12, 1992 deed was operative and in full force and effect. *Id.*

Appellant filed a timely motion for post-trial relief pursuant to Pa.R.C.P. 227.1. Motion for post-trial relief pursuant to Pa.R.C.P. 227.1, 12/19/13, at 1-7. Appellant specifically argued three issues in that motion: 1) that the trial court erred in allowing the notary register to be entered into evidence as a business record; 2) that the trial court committed an error of law by prohibiting Appellant from using the consent motion during trial for cross-examination and/or impeachment purposes; and 3) that Appellant was entitled to judgment notwithstanding the verdict ("jnov"). *Id.* The trial court denied these post-trial motions by order dated June 30, 2014. Appellant filed a timely appeal on July 21, 2014. Appellant filed his court-ordered Pa.R.A.P. 1925(b) statement, and the trial court issued a Pa.R.A.P. 1925(a) statement. Judgment was entered on September 18, 2014.

Appellant presents the following issues for our review:

(a) Whether the trial court erred when it admitted the notary register as a business record of George D'Ambrosio, Esquire without authentication by the notary public?

(b) Whether the trial court erred by failing to permit [Appellant] to cross-examine [Carmella] on the contents of the consent

- 5 -

motion as agreed by the parties and filed previously with the court[?]

(c) Whether the trial court erred by failing to set aside the verdict when said verdict was against the weight of the evidence and the undisputed, uncontradicted testimony of [Appellant] and [Carmella] established that the 1992 deed lacked adequate consideration or any consideration at all?

(d) Whether the trial court erred by failing to set aside the verdict when said verdict was against the weight of the evidence and the undisputed, uncontradicted testimony of [Appellant] and [Carmella] established that an oral contract existed between [Appellant] and [Carmella] to divide the lease payments in a "50/50" manner?

Appellant's Brief at 4-5.

In his first claim, Appellant argues that the notary register, maintained by notary Alma Walters, should not have been admitted through the testimony of Attorney D'Ambrosio. Appellant's Brief at 17. Appellant asserts that the trial court erred in admitting it as a business record of Attorney D'Ambrosio's. *Id.* Appellant contends that the Notary Public Law, 57 P.S. § 161, makes it clear that Ms. Walters' notary register was not a business record of Attorney D'Ambrosio's, but rather, was the exclusive property of Ms. Walters and was her "statutorily mandated record to keep and retain." *Id.* at 18. Thus, Appellant contends, Attorney D'Ambrosio was legally incompetent and incapable of laying the proper foundation for its admissibility. *Id.* Appellant further asserts that by admitting the notary register through Attorney D'Ambrosio, Appellant was prejudiced and denied the right to cross-examine Ms. Walters regarding the disputed deed

- 6 -

transaction and whether Ms. Walters actually witnessed the disputed signatures. *Id.* As a result, Appellant contends that the jury was unaware that Ms. Walters had testified that she signed the notary book, indicating that an individual had appeared before her, even if he or she did not actually sign the document in her presence. *Id.* at 19. Appellant further maintains that after allowing the introduction of the notary register through Attorney D'Ambrosio, the trial court erred in prohibiting questioning of Attorney D'Ambrosio about the deposition testimony of Ms. Walters. *Id.* at 17.

Our standard of review is well settled: "When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law." ***Commonwealth Financial Systems, Inc. v. Smith***, 15 A.3d 492, 496 (Pa. Super. 2011).

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Id.*

Hearsay is defined as "an extra judicial declaration offered to prove the truth of the matter asserted." ***Keystone Dedicated Logistics, LLC v. JGB Enterprises, Inc.***, 77 A.3d 1, 12 (Pa. Super. 2013). A document itself qualifies as hearsay when it contains such hearsay statements. *Id.*

Anything qualifying as hearsay is inadmissible as evidence unless an exception applies. Pa.R.E. 802.

The business records exception is found in Pa.R.E. 803, which provides, in pertinent part:

**Rule 803.   Exception to the Rule Against Hearsay Regardless of Whether the Declarant is Available as a Witness**

* * *

**(6) Records of a Regularly Conducted Activity.**  A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if,

(A)   the record was made at or near the time by— or from information transmitted by—someone with knowledge;

(B)   the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C)   making the record was a regular practice of that activity;

(D)   all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E)   neither the source of information nor other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).   While a qualified witness need not have personal knowledge, the individual must be able to "provide sufficient information

relating to the preparation and maintenance of the records to justify a presumption of trustworthiness." ***Keystone Dedicated***, 77 A.3d at 13 (citing ***Boyle v. Steiman***, 631 A.2d 1025, 1032 (Pa. Super. 1993)).

Additionally, the Uniform Business Records as Evidence Act, codified at 42 Pa.C.S. § 6108, provides:

> A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42 Pa.C.S. § 6108. We have stated the following regarding the Uniform Business Records as Evidence Act:

> The purpose of [the] Uniform Business Records as Evidence Act is to create an additional exception to the hearsay rule in circumstances where a record of an act, a condition or an event was made in the regular course of business, at or near the time of the act, condition or event and where the sources of information, method and time of preparation were such as to justify its admission. The question of whether documents should be admitted under the "business records" exception to the hearsay rule is within the discretionary power of the trial court provided such discretion is exercised within the Uniform Business Records as Evidence Act. It is not essential under the Uniform Business Records as Evidence Act to produce either the person who made the entries or the custodian of the record at the time the entries were made. Moreover, the law does not require that a witness qualifying business records even have a personal knowledge of the facts reported in the business record. As long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness for the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence.

*Boyle*, 631 A.2d at 1033 (internal citations omitted).

At trial, Attorney D'Ambrosio was questioned regarding the notary register maintained by his employee, Ms. Walters. Attorney D'Ambrosio testified that he was an attorney with his own general practice located in West Chester, Pennsylvania, and had been practicing, at the time of the trial, for forty-four years. N.T., 12/10/13, at 3-4. He estimated that he had represented the Campisi family over the course of twenty-five to thirty years in various legal matters. *Id.* at 4. During his years of practice, he employed a secretary named Ms. Walters, who worked for him for twenty-six years. *Id.* at 10. Ms. Walters was also a Notary Public. *Id.* Attorney D'Ambrosio testified that there were typically three notaries employed at his office. *Id.* at 19. During his testimony, counsel presented Attorney D'Ambrosio with Ms. Walter's notary register. *Id.* at 17. Attorney D'Ambrosio testified that the notary register was maintained at his office. *Id.* Attorney D'Ambrosio explained that the notary register reflected an entry for the following: "deed, Campisi, Joseph, Sr., Carmella V., . . . and Joseph, Jr. to Campisi, Joseph Sr. and Carmella." *Id.* at 18. Attorney D'Ambrosio testified that the entry was dated March 12, 1992. *Id.* Appellant's counsel objected to any reference to and admission of this evidence, but the trial court permitted it under the business records exception. *Id.* at 16.

The evidence of record reflects that this notary register was properly admitted into evidence under the business record exception. The record was

made at the time of the transaction by Ms. Walters. The record was kept in the course of Attorney D'Ambrosio's regularly conducted business of his legal practice. Making record of legal documents notarized was a regular practice of that business. Further, all of these conditions were established by Attorney D'Ambrosio, who was obviously intrinsically involved in the workings of his own legal practice. Attorney D'Ambrosio's testimony regarding the regular business activity of notarizing legal documents provided "sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness." ***Keystone Dedicated***, 77 A.3d at 13. Moreover, no factors were established that would indicate a lack of trustworthiness. As such, the notary register was properly introduced under the business records exception. Additionally, for the same reasons, the admission of the notary register was permitted pursuant to the Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108(b).

We find no merit to Appellant's claim that pursuant to the Notary Public Law, the notary register could not be admitted through the testimony of Attorney D'Ambrosio because it was not a business record of Attorney D'Ambrosio's. Appellant's Brief at 17. Although the Notary Public Law provides that the notary register is the responsibility and property of the notary, we cannot agree that such explanation of the maintenance of the notary register precludes admittance of the notary register under the

business records exception or under the Uniform Business Records as Evidence Act.

Further, we conclude that the trial court properly denied Appellant's request to question Attorney D'Ambrosio about Ms. Walters' deposition testimony.[3] These out-of-court statements made by Ms. Walters were properly precluded under the rule against the admission of such testimony which constitute hearsay. Pa.R.E. 802. Appellant's counsel did not argue any exception to the general hearsay rule that would allow introduction of this testimony either at the time of trial or in his brief. Furthermore, Appellant's counsel failed to call Ms. Walters as a witness during the trial, at which time she could have arguably testified to the information Appellant was seeking to admit.[4] Accordingly, Appellant's first issue lacks merit.

In his second claim, Appellant asserts that the trial court erred in prohibiting him from "questioning [Carmella] on the substantive factual and legal averments regarding the key documents in this case as set forth in the Consent Motion to Dismiss [Chesapeake] as a party to this action."

---

[3] Although Appellant makes reference to statements made in Ms. Walters' deposition, that deposition is not part of the certified record; therefore, we cannot consider any such evidence or testimony. *Ruspi v. Glatz*, 69 A.3d 680, 691 (Pa. Super. 2013) ("[F]or purposes of appellate review, what is not in the certified record does not exist.").

[4] We note references made to Ms. Walters' possible unavailability in Carmella's brief. We discern no reference in the trial transcript to Appellant's request that the trial court deemed Ms. Walters as being unavailable, nor does Appellant direct us to such a request.

Appellant's Brief at 20. Appellant maintains that he should have been permitted to use the consent motion to cross-examine and impeach Carmella on false or contradictory statements she made under oath while testifying before the jury. *Id.* Appellant contends that Pa.R.E. 607 permits the credibility of a witness to be impeached by any evidence relevant to that issue, "except as otherwise provided by statute or these rules." *Id.* Appellant further asserts that pursuant to *Monaco v. Gula*, 180 A.2d 893 (Pa. 1962), "prior statements within a pleading that contradict the testimony of that party at trial are substantive evidence and admissible at trial." *Id.* at 20. Appellant contends that, as a result, the verdict should be set aside and a new trial ordered to remedy this error. *Id.* at 21.

As noted previously, "[a]dmission of evidence is within the sound discretion of the trial court and we review the trial court's determinations regarding the admissibility of evidence for an abuse of discretion." *American Future Systems, Inc. v. BBB*, 872 A.2d 1202, 1212 (Pa. Super. 2005). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Id.* "For evidence to be admissible, it must be competent and relevant." *Id.* Additionally, Pa.R.E. 607 provides as follows: "The credibility of a witness may be impeached by any evidence relevant to that issue, except as otherwise provided by statute or these rules."

A review of Appellant's argument, however, reveals his failure to develop it with any specificity. We note the following legal principles regarding appellate briefs:

> This Court will not act as counsel and will not develop arguments on behalf of an appellant. When deficiencies in a brief hinder our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived. Pa.R.A.P. 2101. It is not this Court's responsibility to comb through the record seeking the factual underpinnings of [a] claim.

***Irwin Union Nat. Bank and Trust Co. v. Famous***, 4 A.3d 1099, 1103 (Pa. Super. 2010) (some internal citations omitted). The brief must support the claims with pertinent discussion, with references to the record, and with citations to legal authorities. Pa.R.A.P. 2119(a), (b), (c).

In this case, Appellant has failed to sufficiently develop his argument for our review. Appellant has set forth a vague, one-page argument on this issue. Although Appellant cites to some legal authority, he fails to support his claim with pertinent discussion or references to the record. Most notably, Appellant fails to identify which statements in the consent motion would be used to impeach Carmella, or how use of those statements would result in impeachment of her credibility. Moreover, we are unable to discern from Appellant's limited discussion what trial testimony is being challenged. As a result, we are unable to determine whether statements in the consent motion are relevant to Carmella's trial testimony and her credibility. This Court will not develop arguments on behalf of an appellant. ***Irwin Union***

- 14 -

***Nat. Bank and Trust Co.***, 4 A.3d at 1103. Because these defects impede our ability to conduct meaningful appellate review, we find this issue waived. ***Id.***

In his remaining two issues, Appellant argues that he is entitled to jnov because the evidence was insufficient to sustain the verdict. Appellant's Brief at 21. This Court has stated the following standard of review in an appeal from the trial court's decision to deny jnov:

> [W]e must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standard of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical. We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

***Drake Mfg. Co., Inc. v. Polyflow, Inc.***, 109 A.3d 250, 258-259 (Pa. Super. 2015).

Appellant first argues that the jury failed to give adequate deference to the undisputed testimony showing lack of consideration in the 1992 Deed transfer.[5] Appellant's Brief at 23. Appellant asserts that both he and Carmella testified that the property was originally purchased for $21,000 and that Appellant had contributed one-half of that amount. ***Id.*** at 24.

---

[5] We note that in his Statement of Questions Involved, Appellant lists this as his third issue. In his argument section, however, Appellant has developed this issue as his fourth claim. We have addressed this issue in accordance with the order set forth in the Statement of Questions Involved.

Appellant maintains that he did not receive any compensation for the alleged 1992 Deed transfer, and Carmella testified that although the Deed indicates $1.00 of consideration, nominal in and of itself, Appellant was not paid $1.00 or any other consideration for the transfer. *Id.* Appellant maintains that the jury's failure to give due deference to this uncontroverted fact entitles Appellant to a jnov. *Id.*

In addressing this issue, the trial court provided the following discussion:

> [Appellant] contends that the nominal consideration for the 1992 deed was never received. Specifically, [Appellant] argues that the jury failed to take this into consideration. However, as [Carmella's] brief points out, [Appellant] did not cite to the record in any way to support this claim, nor did [he] make this claim at trial. Moreover, it is clearly established in the record that the jury was asked to determine whether or not the 1992 deed was a forgery, not whether or not [Appellant] did receive nominal consideration. [Appellant] has failed to establish any reason for this court to grant JNOV.

Trial Court Opinion, 9/2/14, at 6.

A review of the trial transcript supports the trial court's analysis. Indeed, the basis upon which Appellant proceeded at trial in support of his claim was that the signature on the deed was forged. We cannot agree that Appellant pursued the theory that the deed was invalid on the basis of his failure to receive consideration for the transfer. In fact, the two questions placed on the jury slip were: 1) whether the 1992 deed signature of Appellant was forged, and 2) whether Appellant and Carmella Campisi had an oral contract whereby Appellant is to receive fifty percent of the gas

profit. Verdict slip, 12/11/13, at 1; *see also* N.T., 12/11/13, at 60, 104, 110. Issues raised for the first time on appeal are deemed waived. Pa.R.A.P. 302(a); *See also Rivera v. Home Depot*, 832 A.2d 487, 491 (Pa. Super. 2003) (quoting *Commonwealth v. York*, 465 A.2d 1028, 1032 (Pa. Super. 1983) (new or different theory of relief may not be advanced for first time on appeal).[6]

In his final issue, Appellant asserts that the testimony presented at trial by both Carmella and Appellant establishes an oral contract, independent of any lease document, that payments under the lease would be split evenly between the two parties. Appellant's Brief at 22-23. Appellant contends that the testimony established a binding and enforceable contract between the parties, "under Pennsylvania law, irrespective of any issues with regard to the ownership of the Property and the forgery on the 1992 Deed." *Id.* at 23. Accordingly, Appellant argues, he is entitled to jnov as to this issue. *Id.*

After reviewing the testimony presented at trial, we cannot agree with Appellant's assertion that the testimony established the existence of an

---

[6] We note that although Appellant raised the claim that the contract was invalid on the basis of lack of consideration in his post-trial motion, he did not pursue this theory of liability at trial. The issue is waived for Appellant's failure to raise it until post-trial motions. *Goods v. Pennsylvania Bd. of Probation and Parole*, 912 A.2d 226, 234 (Pa. 2006) (*citing Commonwealth v. Lopez*, 318 A.2d 334, 336 (Pa. 1974)) (appellant waived his claim by failing to raise it until post-trial motions.).

agreement between the parties to split payments evenly. The record supports the jury's verdict that no such agreement to split the profits existed. As such, we cannot conclude that the trial court committed an abuse of discretion in denying Appellant's request for jnov.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/28/2015